

# KEN PAXTON

### ATTORNEY GENERAL OF TEXAS

January 19, 2016

The Honorable Myra Crownover
Chair, Committee on Public Health
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78711-2910

Opinion No. KP-0057

Re: The legality of fantasy sports leagues under Texas law (RQ-0071-KP)

Dear Representative Crownover:

You ask for an opinion on two questions involving fantasy sports leagues.[1] Specifically, you ask whether

1. [d]aily fantasy sports leagues such as DraftKings.com and FanDuel.com are permissible under Texas law, and

2. [whether i]t is legal to participate in fantasy sports leagues where the house does not take a "rake" and the participants only wager amongst themselves.

Request Letter at 1.

## I. Factual Background

To begin, a brief description of what we understand you to mean by "fantasy sports leagues" is necessary.[2] Fantasy sports leagues allow individuals to simulate being a sports team owner or manager. Generally, an individual assembles a team, or lineup, often under a salary limit or budget, comprising actual players from the various teams in the particular sports league, i.e., National Football League, National Basketball League, or National Hockey League. Points are

---

[1]*See* Letter from Honorable Myra Crownover, Chair, House Comm. on Pub. Health, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (received Nov. 12, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]The forthcoming description of fantasy sports play is compiled generally from the October 16, 2015, Memorandum from the Nevada Attorney General's Office, to which you refer, concerning the legality of daily fantasy sports. *See generally* Memorandum from J. Brin Gibson, Bureau Chief of Gaming & Gov't Affairs & Ketan D. Bhirud, Head of Complex Litig., Nev. Att'y Gen., to A.G. Burnett, Chairman Nev. Gaming Control Bd. & Nev. Gaming Control Bd. Members Terry Johnson & Shawn Reid (Oct. 16, 2015), http://gaming.nv.gov/modules/showdocument.aspx?documentid=10487 ("Nev. Att'y Gen. Memo").

garnered for the individual's "team" based on the actual game performance of the selected players, and scoring is based on the selected player's performance in the game where actual performance statistics or measures are converted into fantasy points. Each participant "owner" competes against other owners in the fantasy league. In a traditional fantasy sports league, play takes place over the course of an entire sports season, tracking the performance of selected players for the duration of the season. In contrast, in daily fantasy sports leagues, play tracks players' performances in single games on a weekly basis. With respect to both types of fantasy games, once a participant selects his or her players as the team or "lineup," they have no control over the players' performance in the actual game or the outcome of the actual game. The participant waits for the outcome, and his or her point levels are determined by the performance of the players on game day. Individuals pay a fee to participate in a league, which fees fund the pot of money used to pay out to the participants as their earned points direct. In play on the Internet sites for DraftKings and FanDuel, a portion (ranging from 6% to 14%) of the fees collected are not paid out to the participants but are retained by the gaming site. The "commissioner" running a traditional fantasy sports league may or may not retain a portion of participants' entry fees.

Turning to the law, article III, section 47(a) of the Texas Constitution provides, "[t]he Legislature shall pass laws prohibiting lotteries and gift enterprises in this State," subject to certain exceptions.[3] In accordance with article III, section 47(a), the Legislature has prohibited a variety of gambling activities through chapter 47 of the Penal Code.[4] In Texas, a person commits a criminal offense if the person "makes a bet on the partial or final result of a game or contest or on the performance of a participant in a game or contest."[5] The answer to your first question turns on whether participants make a bet. Under chapter 47, a "bet" means "an agreement to win or lose something of value solely or partially by chance."[6] And a bet specifically excludes "an offer of a prize, award, or compensation to the actual contestants in a bona fide contest for the determination of skill, speed, strength, or endurance or to the owners of animals, vehicles, watercraft, or aircraft entered in a contest[.]"[7] Lastly, it is a defense to prosecution if, among other things, "no person received any economic benefit other than personal winnings,"[8] which cannot be true if the house takes a "rake."

---

[3]TEX. CONST. art. III, § 47(a); *see City of Wink v. Griffith Amusement Co.*, 100 S.W.2d 695, 701 (Tex. 1936) (articulating as elements necessary to constitute a lottery (1) the offering of a prize, (2) by chance, and (3) the giving of consideration for an opportunity to win the prize).

[4]*See* TEX. PENAL CODE §§ 47.01–.10; *see also Owens v. State*, 19 S.W.3d 480, 483 (Tex. App.—Amarillo 2000, no pet.) (recognizing the Legislature's adoption of chapter 47 pursuant to article III, section 47).

[5]TEX. PENAL CODE § 47.02(a)(1).

[6]*Id.* § 47.01(1).

[7]*Id.* § 47.01(1)(B).

[8]*Id.* § 47.02(b)(2).

## II.     Standard of Review

These questions require us to examine competing statutory provisions.  The courts have developed time-honored canons for reconciling tension within a statute.  According to the United States Supreme Court,

> canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.[9]

This cardinal canon is best implemented by examining the plain contextual meaning of a statute—not by improperly removing a snippet from the statutory context.[10]  A court "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."[11]

In the attorney general opinion process, we cannot resolve factual issues.[12]  But we can assume facts if requested, as you have here.[13]

## III.     Analysis

### A.     Paid Daily Fantasy Sports

Your first question is whether paid daily fantasy sports leagues constitute illegal gambling.  Answering your question requires determining whether paid daily fantasy leagues constitute betting on the performance of a participant in a game (thus constituting illegal gambling) or instead are, in and of themselves, bona fide contests for the determination of skill (thus constituting no bet and no illegal gambling).  Paid daily fantasy league participants are wagering on "the performance of a participant in a game or contest."[14]  If that act constitutes a bet under the statute, then the

---

[9]*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted).

[10]*See Cascos v. Tarrant Cty. Democratic Party*, No. 14-0470, 2015 WL 6558390, at *5 (Tex. Oct. 30, 2015) (reversing a court of appeals when its opinion "improperly takes a snippet of language out of its statutory context"); *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) ("Proper construction requires reading the statute as a whole rather than interpreting provisions in isolation.").

[11]*See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

[12]Tex. Att'y Gen. Op. No. KP-0046 (2015) at 4 (noting that attorney general opinions do not resolve disputed fact questions).

[13]*See* Request Letter 1 ("Please assume the following facts, as more fully explained in an October 16, 2015 memo from the Nevada attorney general's office to the Nevada Gaming Control Board.").

[14]TEX. PENAL CODE § 47.02(a)(1).

activity is illegal gambling. Participants in a daily fantasy sports league pay a fee to participate,[15] only a portion of which is included in the pot of funds that are paid out to the winning "owners." By proffering this fee, players agree to win or lose something of value—a portion of the pot.[16] The dispositive question then is whether the win or loss is determined solely or partially by chance. Proponents of daily fantasy sports games argue that skill is required to predict which players will have the best performance for their position in any particular game.[17] This may well be true. However, Texas law does not require that skill predominate. Instead, chapter 47 requires only a partial chance for there to be a bet.[18] Texas courts have confirmed this plain language in the statute.[19] And this office has previously concluded that "the plain language of section 47.01(1) . . . renders irrelevant the matter of whether poker is predominantly a game of chance or skill. . . . If an element of chance is involved in a particular game, it is embraced within the definition of 'bet.'"[20]

It is beyond reasonable dispute that daily fantasy leagues involve an element of chance regarding how a selected player will perform on game day. The participant's skill in selecting a particular player for his team has no impact on the performance of the player or the outcome of the game. In any given week:

- a selected player may become injured or be ejected and not play in all or a portion of the game—such as an injury to a third-string quarterback causing a team to rotate

---

[15]We understand that some daily fantasy sports contests charge no fee to participate and pay nothing to the winners. Brief from James Ho, Gibson Dunn, to Honorable Ken Paxton at 2, 8, 9 (Dec. 21, 2015) ("GibsonDunn Brief") (on file with the Op. Comm.). Participation in such contests involves no consideration and no bet, and as a result cannot constitute illegal gambling in Texas. *See City of Wink*, 100 S.W.2d at 701.

[16]TEX. PENAL CODE § 47.01(9) (defining a "thing of value" to generally mean "any benefit").

[17]*See* GibsonDunn Brief at 18–25; Brief from Reid Wittliff, ZwillGen, to Honorable Ken Paxton at 6–7 (Dec. 18, 2015) ("ZwillGen Brief") (on file with the Op. Comm.).

[18]*See* TEX. PENAL CODE § 47.01(1) (a "bet" means "an agreement to win or lose something of value solely or partially by chance").

[19]*See Odle v. State*, 139 S.W.2d 595, 597 (Tex. Crim. App. 1940) ("The legal meaning of the term 'bet' is the mutual agreement and tender of a gift of something valuable, which is to belong to one of the contending parties, according to the result of the trial of chance or skill, or both combined." (quoting *Melton v. State*, 124 S.W. 910, 911 (Tex. Crim. App. 1910), *Mayo v. State*, 82 S.W. 515, 516 (Tex. Crim. App. 1904), and Words and Phrases, Second Series, Vol. 1, p. 433); *State v. Gambling Device*, 859 S.W.2d 519, 523 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("[I]t is the incorporation of chance that is the essential element of a gambling device, not the incorporation of a particular proportion of chance and skill.").

[20]Tex. Att'y Gen. Op. No. GA-0335 (2005) at 3–4.

three different players at quarterback in one half[21] or a batter charging the mound after getting hit by a pitch and getting corrected and then ejected;[22]

- a selected player may perform well or perform poorly against the opponent that week, perhaps due to weather conditions—such as a defensive tackle diving on a football after a blocked field goal attempt, only to allow the other team to recover the ball and score the game-winning touchdown;[23]

- a selected player's performance may be impacted by the state of the game equipment (say, the underinflation of a football or the presence of cork inside a baseball bat)[24] or facilities (such as the air conditioning system in a basketball arena failing, causing the star player for a team aptly named "Heat" to suffer temperature induced legs cramps and be carried off the court);[25] and

- a selected player's performance may be impacted by a call of refereeing officials— such as a catch that all individuals not wearing stripes believe to constitute a touchdown being ruled an incompletion with instant replay.[26]

The list goes on. All of these random circumstances, especially if they occur after the participants' selections are locked in, amount to chance and do not involve any skill on the part of the participant. Chance happens, especially on game day. "That's why they play the game."[27] Based

---

[21]John Werner, *Everybody hurts: Another QB injured, Bears stumble in home finale, 23-17*, WACO TRIB., (Dec. 6, 2015), http://www.wacotrib.com/sports/baylor/football/everybody-hurts-another-qb-injured-bears-stumble-in-home-finale/article_4e581922-a55e-5289-a7c7-dfa43ca15a5a.html.

[22]*See* Thomas Neumann, *Nolan Ryan-Robin Ventura fight anniversary—13 things you should know*, ESPN.com, (Aug. 4, 2015), http://espn.go.com/mlb/story/_/id/13375928/nolan-ryan-robin-ventura-fight-anniversary-13-things-know.

[23]Daniel Hajek, *Cowboys' Leon Lett On 'One Of The Worst Days Of My NFL Career,'* NAT'L PUB. RADIO, (Nov. 27, 2015), http://www.npr.org/2015/11/27/457565031/cowboys-leon-lett-on-one-of-the-worst-days-of-my-nfl-career.

[24]Ian Rapoport, *More details on the investigation of Patriots' deflated footballs*, NFL.com, (Feb. 1, 2015), http://www.nfl.com/news/story/0ap3000000466783/article/more-details-on-the-investigation-of-patriots-deflated-footballs; Rick Weinberg, *Sammy Sosa gets caught with corked bat*, ESPN.com, (Aug. 4, 2004), http://www.espn.go.com/espn/espn25/story?page=moments/33.

[25]Royce Young, *Spurs: AC back up and running*, ESPN.com, (June 6, 2014), http://www.espn.go.com/nba/playoffs/2014/story/_/id/11042810/san-antonio-spurs-say-air-conditioning-their-arena-repaired.

[26]Brandon George, *Was it a catch? Controversial Dez Bryant play reversed*, DALLAS MORNING NEWS, (Jan. 11, 2015), http://www.sportsday.dallasnews.com/dallas-cowboys/cowboysheadlines/2015/01/11/was-it-a-catch-controversial-dez-bryant-play-reversed.

[27]Bud Montet, *Random Shots*, MORNING ADVOC., Dec. 30, 1965, at 2C (attributing quote to University of Kentucky basketball coach Adolph Rupp), *see* THE BIG APPLE, *That's why they play the games* (sports adage), http://www.barrypopik.com/index.php/new_york_city/entry/thats_why_they_play_the_games.

on the facts you ask us to assume, the argument that skill so predominates that chance is minimal is nonetheless an admission that chance is an element and partial chance is involved.[28] Accordingly, odds are favorable that a court would conclude that participation in daily fantasy sports leagues is illegal gambling under section 47.02 of the Penal Code.[29]

Two providers of daily fantasy sports leagues nonetheless contend that participation in such leagues is not gambling because the statutory exception to the definition of "bet" excludes "an offer of a prize, award, or compensation to the actual contestants in a bona fide contest for the determination of skill[.]"[30] Specifically, they contend the element of skill so predominates in daily fantasy sports as to render chance immaterial and that the fantasy league participants are the actual contestants. While Texas courts have yet to address the actual-contestant exclusion from the definition of "bet," this office addressed that matter in 1994. The question presented involved participants paying an entry fee for a chance to win prizes in a contest to forecast the outcome of approximately 150 sporting events, which required "using the skills necessary to analyze relevant data, including, but not limited to, point differentials as published in newspapers of general circulation, weather conditions, injuries or other factors."[31] We noted that the Practice Commentary to the statute indicated the actual-contestant exclusion "is intended to exclude only awards and compensation earned by direct participation in the contest—the pole-vaulter's cup, the pro football player's salary—not the receipt of a wager made on its outcome."[32] We concluded that, although the "exclusion may embrace athletes actually competing in the sporting events you refer to, it does not embrace those who pay entry fees for a chance to win a prize from forecasting the outcome of the events."[33] Moreover, the other types of contests in the actual-contestant exclusion (speed, strength, or endurance or to the owners of animals, vehicles, watercraft, or

---

[28]The attorneys general in Nevada and New York have reached the conclusion that there is sufficient chance to violate the "material chance" standard in their state laws. *See* Nev. Att'y Gen. Memo at 9, 15–16; Letter from Kathleen McGee, Chief, New York Attorney General's Internet Bureau, to Jason Robins, CEO, DraftKings, Inc., (Nov. 10, 2015) at 1, http://ag.ny.gov/pdfs/Final_NYAG_DraftKings_Letter_11_10_2015.pdf ("DraftKings' customers are clearly placing bets on events outside of their control or influence, specifically on the real-game performance of professional athletes. Further, each DraftKings wager represents a wager on a 'contest of chance' where winning or losing depends on numerous elements of chance to a 'material degree.'"). *See also New York v. DraftKings, Inc.*, No. 453054-2015, at 7, 10 (N.Y. Sup. Ct. Dec. 11, 2015), *New York v. FanDuel Inc.*, No. 453056-2015, at 7, 10 (N.Y. Sup. Ct. Dec. 11, 2015) (orders determining that the payment of an entry fee to participate in daily fantasy sports is risking a thing of value and, under New York statutes, constitutes illegal gambling and granting preliminary injunction and temporary restraining order against defendant in each action).

[29]Likewise, entities that promote daily fantasy sports league gambling could possibly violate section 47.03 of the Penal Code by operating a gambling place or becoming a custodian of a bet. *See* TEX. PENAL CODE § 47.03(a).

[30]TEX. PENAL CODE § 47.01(1)(B). *See* GibsonDunn Brief at 17; ZwillGen Brief at 4.

[31]Tex. Att'y Gen. Op. No. LO-94-051, at 1.

[32]*Id.* at 2.

[33]*Id.*

aircraft) inform the nature of what the Legislature means with the term "skill."[34] Following this office's 1994 opinion, the Illinois Attorney General recently concluded that Illinois's similar statutory actual-contestant exclusion does not apply to participants of daily fantasy sports leagues.[35]

Subsection 47.01(1)(B), and our interpretation of it, remains unchanged. For example, if a person plays in a golf tournament for an opportunity to win a prize, he or she is within the actual-contestant exclusion to the definition of betting. If instead the person does not play in that tournament but wagers on the performance of an actual contestant, he or she is gambling under Texas law. To read the actual-contestant exception as some suggest would have that exception swallow the rule.[36]

## B.    Season-Long Fantasy Sports

The same framework applies to traditional fantasy sports leagues, but the outcome may differ depending on whether the house takes a rake. Payment of a fee to participate in the league constitutes an agreement to win or lose something of value, and the outcome depends at least partially on chance, thus involving a bet. However, traditional fantasy sports leagues often differ from daily fantasy sports leagues in that any participation fee is not retained by the "commissioner" of the traditional fantasy sports league and is instead paid out wholly to the participants. And section 47.02 contains a defense to prosecution when "(1) the actor engaged in gambling in a private place; (2) no person received any economic benefit other than personal winnings; and (3) except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants."[37] Thus, to the extent play in a traditional fantasy sports league satisfies the above three elements, the participants in such league may avail themselves of the defense to prosecution.

---

[34]*See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015) (applying doctrine of *ejusdem generis* to hold that the a broad term in a list was constrained by the meaning of the remaining, narrower terms).

[35]*See* Ill. Att'y Gen. Op. No. 15-006 (Dec. 23, 2015) at 10–13 (Letter from Honorable Lisa Madigan, Ill. Att'y Gen. to Honorable Elgie R. Sims, Jr. Ill. State Rep., Dist. 34, and Honorable Scott R. Drury, Ill. State Rep., Dist. 58).

[36]*See Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73, 81 (Tex. 2014) ("[C]ourts are to avoid interpreting a statute in such a way that renders provisions meaningless." (quotation marks omitted) (alteration in original)). One paid daily fantasy sports operator also contends that the payment of entry fees to participate in fantasy leagues are not bets. *See* ZwillGen Brief at 4. The New York court rejected this argument, holding that the entry fees were "something of value" under New York law and thus constituted a bet. *New York v. DraftKings, Inc.*, No. 453054-2015, at 7 (N.Y. Sup. Ct. Dec. 11, 2015), *New York v. FanDuel Inc.*, No. 453056-2015, at 7 (N.Y. Sup. Ct. Dec. 11, 2015). We agree with the New York court that the labelling of the consideration as an entry fee does not transform its character as consideration for the opportunity to win a prize.

[37]TEX. PENAL CODE § 47.02(b); *see* Tex. Att'y Gen. Op. No. GA-0611 (2008) at 5 (acknowledging that the term "and" is usually used in a conjunctive sense).

In present form, which has remained unchanged for purposes of this analysis since its codification in 1973,[38] the Legislature has seen fit to prohibit betting on the performance of individuals in games or contests but to not prohibit actual contestants in contests of skill from receiving compensation or prizes.[39]  Under this statutory framework, odds are favorable that a court would conclude that participation in paid daily fantasy sports leagues constitutes illegal gambling, but that participation in traditional fantasy sport leagues that occurs in a private place where no person receives any economic benefit other than personal winnings and the risks of winning or losing are the same for all participants does not involve illegal gambling.  It is within the province of the Legislature, and not this office or the courts, to weigh the competing policy concerns necessary to alter this framework to legalize paid daily sports fantasy leagues.

---

[38]*See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, Sec. 1, § 47.01–.02, 1973 Tex. Gen. Laws 883, 965–66.

[39]TEX. PENAL CODE §§ 47.01(1)(B), .02(a)(1).

## S U M M A R Y

Under section 47.02 of the Penal Code, a person commits an offense if he or she makes a bet on the partial or final result of a game or contest or on the performance of a participant in a game or contest. Because the outcome of games in daily fantasy sports leagues depends partially on chance, an individual's payment of a fee to participate in such activities is a bet. Accordingly, a court would likely determine that participation in daily fantasy sports leagues is illegal gambling under section 47.02 of the Penal Code.

Though participating in a traditional fantasy sports league is also illegal gambling under section 47.02, participants in such leagues may avail themselves of a statutory defense to prosecution under section 47.02(b) of the Penal Code when play is in a private place, no person receives any economic benefit other than personal winnings, and the risks of winning or losing are the same for all participants.

Very truly yours,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee